IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| COLLETTE FLANAGAN, | § | |
| *Individually and on behalf of* | § | |
| THE ESTATE OF CLINTON | § | |
| ALLEN, *et al.,* | § | |
| | § | |
| Plaintiffs | § | CIVIL ACTION NO. |
| | § | 3:13-CV-4231-M |
| V. | § | |
| | § | JURY TRIAL DEMANDED |
| THE CITY OF DALLAS, TEXAS, | § | |
| *et al.,* | § | |
| | § | |
| *Defendants* | § | |

---

**PLAINTIFFS' RESPONSE TO DEFENDANT CLARK STALLER'S
PARTIAL MOTION FOR SUMMARY JUDGMENT
ON QUALIFIED IMMUNITY AND BRIEF IN SUPPORT**

---

Daryl K. Washington
Texas Bar No. 24013714
dwashington@dwashlawfirm.com

Matthew J. Kita
Texas Bar No. 24050883
matt@mattkita.com

325 North St. Paul Street, Suite 1975
Dallas, Texas 75201
(214) 880-4883 (phone)
(214) 751-6685 (facsimile)

ATTORNEYS FOR PLAINTIFFS

# TABLE OF CONTENTS

Table of Contents......................................................................... i

Table of Authorities ................................................................... iii

Introduction................................................................................. 1

Summary of Factual Issues in Dispute ........................................ 3

    A.    The police dispatch did not allege that Allen engaged in violent conduct, nor did it provide Staller with any information about Allen other than he was wearing black clothing and was African-American. ................................................................... 3

    B.    Staller did not obtain any information from the complaining witness before he decided to pursue Allen................................... 4

    C.    Staller did not shoot Allen in self-defense after a fight. ............... 5

Standards of Review ..................................................................... 7

    A.    Summary Judgment.................................................................. 7

    B.    Qualified Immunity .................................................................. 8

Arguments and Authorities........................................................... 9

    A.    Staller has not established that he is entitled to summary judgment on Plaintiffs' false-arrest claim..................................... 9

        1.    A genuine issue of material fact exists with regard to whether Staller had probable cause to arrest Allen. ........... 9

        2.    A genuine issue of material fact exists with regard to whether a reasonable officer would have concluded that Staller had probable cause to arrest Allen. ...................... 11

B.      Staller is not entitled to qualified immunity as a matter of law on
        Plaintiffs' excessive-force claim................................................... 12

        1.      A genuine issue of material fact exists with regard to
                Plaintiffs' excessive-force claim. ................................... 12

        2.      A genuine issue of material fact exists with regard to
                whether a reasonable officer would have concluded that
                Staller used excessive force. .......................................... 18

C.      Plaintiffs properly pleaded their racial-profiling claim............... 20

Conclusion and Prayer ................................................................................. 22

# TABLE OF AUTHORITIES

## Cases

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986) ................................................................. 7

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986) ................................................................. 7

*Flores v. City of Palacios*,
381 F.3d 391 (5th Cir. 2004) ................................................... 12

*Geils v. Patin*,
941 F. Supp. 2d 722 (N.D. Tex. 2012) ............................... 8, 12

*Graham v. Connor*,
490 U.S. 386 (1989) ............................................................... 12

*Isquith v. Middle South Utilities, Inc.*,
847 F.2d 186 (5th Cir. 1988) ..................................................... 8

*Lavespere v. Niagara Mach. & Tool Works, Inc.*,
910 F.2d 167 (5th Cir. 1990) ..................................................... 8

*Lodge Hall Music, Inc. v. Waco Wrangler Club, Inc.*,
831 F.2d 77 (5th Cir.1988) ....................................................... 7

*Malley v. Briggs,*
475 U.S. 335 (1986) ................................................................. 8

*Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*,
475 U.S. 574 (1986) ................................................................. 7

*Pearson v. Callahan,*
555 U.S. 223 (2009) ................................................................. 8

*Saucier v. Katz,*
533 U.S. 194 (2001) ................................................................. 8

*United States v. Preston,*
608 F.2d 626 (5th Cir. 1979) ................................................... 9

*United States v. Wadley*,
   59 F.3d 510 (5th Cir. 1995) ...................................................................... 10


**Statutes**

Tex. Code Crim. Proc. art. 42.013 ............................................................... 15

Tex. Penal Code § 12.03 ............................................................................... 15

Tex. Penal Code § 42.01 ............................................................................... 14

Tex. Penal Code § 42.07 ............................................................................... 15

Tex. Penal Code § 49.02 ............................................................................... 14

Tex. Penal Code § 12.02 ............................................................................... 15


**Rules**

Fed. R. Civ. P. 56 .......................................................................................... 7

Fed. R. Evid. 801 ............................................................................... 10, 13, 14

Fed. R. Evid. 802 ............................................................................... 10, 13, 14

## INTRODUCTION

In this lawsuit, Plaintiffs claim that Defendant Clark Staller ("Defendant" or "Staller"), an officer with the Dallas Police Department, is liable for the wrongful death of Clinton Allen ("Allen"), whom Staller shot seven times at point-blank range, despite the fact that Allen was unarmed.[1] Staller has asked this Court to grant a take-nothing summary judgment on Plaintiffs' false-arrest and excessive-force causes of action, claiming that (a) Plaintiffs cannot prevail as a matter of law; or, alternatively, (b) he is entitled to qualified immunity for his actions.[2]

Staller's motion should be denied because genuine issues of material fact remain in dispute with regard to whether he arrested Allen without probable cause, whether he used excessive force when subjecting him to a gangland-style execution, and whether any reasonable officer could have believed that Staller's conduct was lawful. In addition to the statements of police department dispatchers and numerous eyewitnesses, Plaintiffs have also offered the expert testimony of William P. Flynn, a 35-year law-enforcement veteran with extensive experience in homicide investigations and officer-involved shootings, who opines that no reasonable officer could

---

[1] Docket No. 15, pp. 4–13.

[2] Docket No. 30.

have believed that Staller's actions were lawful.[3]  Put otherwise, Staller's conduct was so egregious, a reasonable jury could conclude that Staller was either plainly incompetent or knowingly violated the law.

Finally, Staller offers no argument or authority to suggest that he is entitled to qualified immunity on Plaintiffs' racial-profiling claim.  Instead, he claims that he is entitled to summary judgment because of insufficient allegations in Plaintiffs' complaint. Not only is such a motion inappropriate at this time (for the Court only permitted Staller to file a motion addressing issues related to qualified immunity), they also lack merit.  Because the facts that Plaintiffs pleaded, if accepted as true, could permit this Court to draw the reasonable inference that in recent months and years, racial profiling was a persistent and widespread practice in the Dallas Police Department. And because Staller failed to offer any evidence to demonstrate that the absence of a factual dispute with regard to these allegations, Staller's motion for summary judgment on this cause of action should also be denied.

---

[3] Flynn's qualifications are discussed at length in his affidavit.  For example, Flynn has degrees in police science, criminal justice, and public administration; has a lifetime teaching credential in the State of California in police administration, criminal justice and public administration; was the lieutenant in charge of a police department's internal affairs division and conducted investigations into officer-involved shootings; and, on prior occasions, has been qualified as an expert in federal courts on issues such as police practices and procedures, police officer misconduct, unlawful detainment/arrest, excessive force, and criminal investigations.  *See* App., p. 14–16.

SUMMARY OF FACTUAL ISSUES IN DISPUTE

**A.    The police dispatch did not allege that Allen engaged in violent conduct, nor did it provide Staller with any information about Allen other than he was wearing black clothing and was African-American.**

STALLER'S ALLEGATION: Staller claims that he received a call from police dispatch "regarding a disturbance with violence," specifically stating that "the suspect had kicked the complainant's door while yelling" and provided "the complainant's name, and a description of the suspect: an African-American male, wearing black clothing and a black 'doo-rag.'"[4]

PLAINTIFFS' EVIDENCE: The transcript of the dispatch plainly reveals that the only information provided to Staller was, "Got a guy banging on the door 60 times day," who was described as a "black male, all black."[5]

EXPERT'S OPINION: A reasonable police officer, having the same training and experience as Staller, and having the same limited information that Staller had, would have confirmed if the black male was the person responsible for the disturbance by simply asking either the "complainant" or "the other woman", "is that the guy?"[6]

---

[4] Docket No. 32-1, p. 1.

[5] App., pp. 8–13.

[6] App., pp. 18–19, 21.

- 3 -

**B.     Staller did not obtain any information from the complaining witness before he decided to pursue Allen.**

STALLER'S ALLEGATION: Staller claims that before he reached the complainant's apartment, the complainant walked onto the second floor balcony and said that Allen appeared to be "on something" and pointed to the direction where she thought Allen went. He further claims that another woman on the balcony told him that Allen had been yelling, cursing, and kicking at the door.[7]

PLAINTIFFS' EVIDENCE: Mandria Kelly, the complaining witness, did not tell Staller that Allen appeared to be "on something," nor did she point to the direction where she thought Allen went. According to Kelly, Staller only asked her where Allen was, but that Staller ran after Allen before she could provide an answer.[8]

EXPERT'S OPINION: A reasonable police officer, having the same training and experience as Staller, and having the same limited information that Staller had, would have confirmed if the African-American male was the person responsible for the disturbance by simply asking either the complainant or the other woman on the balcony, "is that the guy?"[9]

---

[7] Docket No. 32-1, pp. 1–2.

[8] App., pp. 28–30.

[9] App., p. 18–19, 21.

- 4 -

**C.** **Staller did not shoot Allen in self-defense after a fight.**

STALLER'S ALLEGATION: Staller claims that Allen attacked him, and that he only shot Allen because Allen was on top of him, choking him from behind. Staller further claims that he shot Allen with the gun positioned underneath Staller's left armpit, firing bullets behind him.[10]

PLAINTIFFS' EVIDENCE: An eyewitness to the shooting stated under oath that she "saw no aggression, no fighting, no acting out or anything" by Staller.[11] She also stated that Staller shot Allen when both parties were standing, Allen had his hands in the air, and that Staller fired multiple shots at Allen while walking backwards, in an execution-style murder.[12] Allen's autopsy confirms that he had bullet-entry wounds on his back and on the right side of his torso.[13]

EXPERT'S OPINION: It is unfathomable that the shooting of Allen could have occurred as stated in Staller's affidavit. If, in fact, Allen had been behind Staller and choking him to the point of lifting him off the ground; he Allen would have had to have been in contact with Staller's body. If so, with Staller reaching with his right hand across his torso and under his left armpit

---

[10] Docket 32-1, p. 2.

[11] App., pp. 32–33.

[12] App., pp. 32–33.

[13] App., pp. 25–26, 36, 39–40.

to have fired seven rounds, it is inexplicable that the entry wounds would have occurred in decedent Allen's body in the pattern as described in Allen's autopsy report; specifically the entry wounds to the upper right portion of decedent Allen's chest and the entry wound on decedent Allen's back.[14]

---

[14] App., pp. 24–26.

## STANDARDS OF REVIEW

### A.     Summary Judgment

As the summary-judgment movant, Staller bears the burden of demonstrating an absence of evidence to support the non-movant's case.[15] In other words, if this Court concludes that a genine issue of fact exists with regard to Plaintiffs' causes of action that are the subject of Staller's motion, he is not entitled to summary judgment on those claims.[16] A genuine issue of material fact exists where the evidence is such that a reasonable jury could return a verdict for the non-moving party.[17]

When considering the merits of Staller's Motion for Partial Summary Judgment, this Court must draw all reasonable inferences in Plaintiffs' favor.[18] With regard to the evidence that is favorable to Plaintiffs, a court should be more lenient in allowing evidence that is admissible, although it may not be in admissible form.[19] Finally, Plaintiffs may also identify

---

[15] *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

[16] Fed. R. Civ. P. 56.

[17] *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).

[18] *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

[19] *See Lodge Hall Music, Inc. v. Waco Wrangler Club, Inc.*, 831 F.2d 77, 80 (5th Cir.1988).

evidentiary documents already in the record that establish specific facts showing the existence of a genuine issue.[20]

## B.   Qualified Immunity

This Court must undertake a two-pronged inquiry to evaluate Staller's claim of qualified immunity.[21] The first question is, "[t]aken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?"[22] The second prong inquires "whether the right was clearly established" at the time of the alleged misconduct.[23] The test to determine if the right was clearly established is "whether it would be clear to a reasonable officer that the conduct was unlawful in the situation he confronted."[24] If a reasonable jury could conclude that an officer is "plainly incompetent" or "knowingly violates the law," he is not entitled to qualified immunity.[25]

---

[20] *Lavespere v. Niagara Mach. & Tool Works, Inc*., 910 F.2d 167, 178 (5th Cir. 1990); *Isquith v. Middle South Utilities, Inc*., 847 F.2d 186, 198–200 (5th Cir. 1988).

[21] Contrary to Staller's representations in his motion, the Supreme Court of the United States has held that the prongs can be addressed in either order. *See Geils v. Patin*, 941 F. Supp. 2d 722, 727 n.5 (N.D. Tex. 2012) (Boyle, J.) (citing *Pearson v. Callahan,* 555 U.S. 223, 236 (2009)).

[22] *Saucier v. Katz,* 533 U.S. 194, 201 (2001), *overruled in part by Pearson*, 555 U.S. at 231.

[23] *Saucier*, 533 U.S. at 201.

[24] *Saucier*, 533 U.S. at 202.

[25] *Saucier*, 533 U.S. at 202 (citing *Malley v. Briggs,* 475 U.S. 335, 341 (1986)).

**ARGUMENTS AND AUTHORITIES**

**A.     Staller has not established that he is entitled to summary judgment on Plaintiffs' false-arrest claim.**

**1.     A genuine issue of material fact exists with regard to whether Staller had probable cause to arrest Allen.**

Staller's motion for summary judgment on Plaintiffs' false-arrest claim is predicated entirely on his mistaken belief that the information he had before encountering Allen is "uncontroverted" and was sufficient to establish probable cause. It is not. Because a genuine issue of material fact exists with regard to what Staller knew before he arrested Allen, he is not entitled to summary judgment on this cause of action.

In his motion, Staller correctly notes that he was not entitled to arrest Allen without probable cause. Probable cause to arrest exists where the facts and circumstances within the arresting officers knowledge and of which they had reasonably trustworthy information are sufficient in themselves to warrant a man of reasonable caution in the belief that an offense has been or is being committed.[26]

Staller claims that police dispatch provided him with "the complainant's name, and a description of the suspect: an African-American

---

[26] *United States v. Preston,* 608 F.2d 626, 632 (5th Cir. 1979).

male, wearing black clothing and a black 'doo-rag.'"[27] He further claims that he received this same information from the complaining witness. These statements, of course, are pure hearsay and are therefore inadmissible.[28] Moreover, they are inconsistent with the audio recording of the dispatch that Staller claims to have received. A review of the transcript plainly reveals that dispatcher merely stated that "a black male, all black" was "banging on a door 60 times a day."[29] And according to the complaining witness, Staller asked her "where [Allen] was," but before she could provide an answer, Staller "[saw] someone and began running."[30] Notably, Staller does not offer any evidence to suggest that he saw Allen committing an offense.[31]

In sum, the evidence presents a factual dispute as to whether Staller had any information about Allen before he arrested him *other* than the fact that Allen happened to be African-American. Because this Court must draw

---

[27] Docket 32-1, p. 1.

[28] Fed. R. Evid. 801, 802.  Plaintiffs have objected to Staller's attempt to offer hearsay as summary-judgment evidence.

[29] App., pp. 8–13.

[30] App., pp. 28–30.

[31] Although Staller alleges elsewhere in his motion that Allen attempted to flee, a suspect's attempt to walk away or flee from a police officer is generally not sufficient to create probable cause, even if the suspect flees in a high crime neighborhood. *United States v. Wadley*, 59 F.3d 510, 512 (5th Cir. 1995). Regardless, Staller does not argue that Allen's flight gave rise to probable cause and therefore, it cannot be considered as a basis for judgment as a matter of law on this issue.

all reasonable inferences from the evidence in Plaintiffs' favor, Staller is not

entitled to summary judgment on this cause of action.

**2.      A genuine issue of material fact exists with regard to whether a reasonable officer would have concluded that Staller had probable cause to arrest Allen.**

Staller does not dispute that the right to be free from false arrest was

clearly established at the time the incident that is the subject of this suit.

Implict in his motion, however, is his belief that a reasonable officer would

conclude that his conduct was lawful.[32] Plaintiffs respectfully disagree.

According to William P. Flynn, a 35-year law-enforcement officer

with extensive experience in approaching or deciding whether approach a

possible suspect, a reasonable police officer, having the same training and

experience as Staller, and having the same limited information that Staller

had, would have confirmed if the black male he saw was the person

responsible for the disturbance by simply asking the complaining witness,

"is that the guy?"[33] There is no evidence to suggest that Staller ever made

that inquiry; to the contrary, there is testimony to demonstrate that Staller

pursued Allen without receiving any information from the complaining

---

[32] Plaintiffs have objected to Staller's opinions regarding the reasonableness of his conduct on the basis that the are conclusory and/or because they constitute opinions from a non-designated expert without proper predicate to establish his qualifications or credibility to offer same.

[33] App., pp. 18–19, 21.

witness.[34] Accordingly, a genuine issues of material fact exists with regard to whether a reasonable officer would conclude that Staller's conduct was lawful and therefore, he is not entitled to qualified immunity on this cause of action.

**B.     Staller is not entitled to qualified immunity as a matter of law on Plaintiffs' excessive-force claim.**

**1.     A genuine issue of material fact exists with regard to Plaintiffs' excessive-force claim.**

To establish a claim of excessive force under the Fourth Amendment, Plaintiffs must demonstrate: "(1) an injury that (2) resulted directly and only from a use of force that was excessive to the need and that (3) the force used was objectively unreasonable."[35] Here, Staller does not dispute that Allen suffered an injury, but only claims that Plaintiffs cannot satisfy the second and third elements of this cause of action.[36] And although Staller properly identifies the criteria that this Court must consider when concluding whether his acts were excessive and objectively unreasonable (severity of the crime at issue, whether the suspect poses an immediate threat to the safety of officers or others, and whether he is actively resisting arrest or attempting to

---

[34] In fact, Staller's summary-judgment evidence does not even suggest that he verified Allen's identity with the complaining witnesses *after* he shot and killed him.

[35] *Geils,* 941 F. Supp. 2d at 727 (citing *Flores v. City of Palacios*, 381 F.3d 391, 396 (5th Cir. 2004)).

[36] Docket No. 31, p. 12.

evade arrest by flight),[37] Plaintiffs respectfully submit that genuine issues of material fact remain in dispute with regard to each.

**a.      Severity of the crime at issue.**

Once again, the only evidence that Staller offers with regard to the severity of the crime at issue is a hearsay statement in his declaration that the suspect at issue was "described as having kicked the complainant's door while yelling."[38] Staller further claims that the dispatcher described the crime as "a disturbance with violence."[39]

As aforesaid, Staller's testimony is inconsistent with the trascript of the dispatch. A review of the transcript plainly reveals that the dispatcher never described the suspect as "kicking" the door, nor was the word "violence" ever used. Instead, the dispatcher merely stated that I got "a black man, all black" "banging on a door 60 times a day."[40] Staller also claims that an unidentified woman told him that Allen was "yelling, cursing, and kicking at their door."[41] This statement, of course, is also pure hearsay and is

---

[37] Docket No. 31, p. 12 (citing *Graham v. Connor*, 490 U.S. 386, 396 (1989)).

[38] Docket No. 32-1, p. 1.

[39] Docket No. 32-1, p. 1.

[40] App., pp. 8–13.

[41] Docket No. 32-1, pp. 1–2.

therefore inadmissible.[42] But even if it were admissible, it does not support any charge other than disorderly conduct, which is a Class C misdemeanor under the Texas Penal Code.[43]

Staller also claims that he learned from Mandria Kelly, the complaining witness, that Allen was "on something." This statement is also inadmissible hearsay. [44] Moreover, Kelly made no mention of this conversation in her written affidavit.[45] According to Kelly, Staller asked her "where [Allen] was," but she did not provide an answer, and Staller then "seen someone and began running." [46] But even assuming—without conceding—that Staller's testimony about what Kelly said was admissible *and* true, this allegation would only support suspicion of public intoxication, which is also a class C misdemeanor.[47]

Staller's testimony that he "believed that Allen might have committed the Texas penal offenses of harassment and/or family violence" is simply not supported by any evidence. With regard to the offense of harassment (a class

---

[42] Fed. R. Evid. 801, 802.  Plaintiffs have objected to Staller's attempt to offer hearsay as summary-judgment evidence.

[43] Tex. Penal Code § 42.01(d).

[44] Fed. R. Evid. 801, 802.  Plaintiffs have objected to Staller's attempt to offer hearsay as summary-judgment evidence.

[45] App. 28–30.

[46] App. 28–30.

[47] Tex. Penal Code § 49.02(c).

B misdemeanor), this offense requires the suspect to have made a communication via telephone or writing, an electronic communication, or a false report that another has suffered injury or death.[48] Moreover, even if Staller had been told that Allen was engaging in "violent" conduct—which he was not—"family violence" is not a "penal offense," it is an aggravating factor recognized in the Code of Criminal Procedure that is plainly not applicable to a charge of disorderly conduct or public intoxication.[49] To the extent Staller offers this testimony to suggest that Allen was committing a "severe crime" at the time he arrived, Plaintiffs respectfully submit that is plainly inconsistent with both the law and the facts.

In sum, Staller had no reason to believe that Allen was engaged in anything more than conduct that could constitute a Class C misdemeanor, which is the lowest degree of criminal offense under Texas law.[50] Accordingly, the law and the summary-judgment evidence raise a question of fact as to whether it was reasonable for Staller to pursue Allen at all, much less to pursue him with a deadly weapon.

---

[48] Tex. Penal Code § 42.07.

[49] Tex. Code Crim. Proc. art. 42.013

[50] Tex. Penal Code §§ 12.02, .03. The Texas Penal Code specifically provides that a conviction of a Class C misdemeanor "does not impose any legal disability or disadvantage." Tex. Penal Code § 12.03(c).

**b.      Immediate threat to the safety of the officer or others and actively resisting arrest**

Having established that there is (at the very least) a fact issue with regard to whether Staller had any reason to believe that Allen had engaged in "violent conduct" or any "severe" criminal activity whatsoever, the Court must next consider whether Allen posed an immediate threat to Staller or was actively resisting arrest. Once again, Staller's affidavit testimony is belied by the testimony of other eyewitnesses, which negates Staller's claim that his conduct was "objectively reasonable" as a matter of law.

According to Staller, he attempted to detain Allen who, "at all times, refused to obey my instructions."[51] Staller then claims that Allen ran around a corner and attempted to hide on a neighboring patio.[52] Staller then claims that Allen attacked him by jumping over a hedge and railing.[53] After a fight that involved both of them tumbling over a railing, Staller alleges that Allen eventually pinned him on his stomach and attempted to choke him from

---

[51] Docket No. 32-1, p. 2.

[52] Docket No. 32-1, p. 2.

[53] Docket No. 32-1, p. 2.

behind.[54] This prompted Staller to reach across his body for his gun, position it underneath his left armpit, and fire multiple shots at Allen.[55]

Staller's account, however, is completely inconsistent with eyewitness testimony, Allen's medical records, and practical experience. Pastor Ira Spears, who saw Staller's confrontation with Allen just one minute prior to the shooting, testified that the two were standing six feet away from each other in the front entryway of a building.[56] He further stated that Allen was not showing any signs of aggression toward Staller, but that Staller was screaming threats and obscenities at Allen, such as, "show me your motherfucking hands or I am going to bust a cap in your ass."[57]

Vicki McNight-Simpson, who actually witnessed the shooting, described the situation as "like seeing a helpless person executed." She also testified:

> What I witnessed was the police officer telling the young man to put your hands up several times, and then he just began to shoot the young man. The policeman was backing up and shooting him at the same time. At one point, when this policeman shot the young man on the left hand side upper chest toward the left arm; the young man held his right hand up, as if to ask the policeman to stop shooting him. The young man

---

[54] Docket No. 32-1, p. 2.

[55] Docket No. 32-1, p. 2.

[56] App., p. 31.

[57] App., p. 31.

looked took his right hand and placed it over the shot in his upper left and looked at the blood then he looked at the policeman in disbelief. Then the officer fired several more times at this young man. …I saw no aggression, no fighting, no acting out or anything from this young man, but still, the policeman kept shooting him and yelling for him to put his hands up, but he was already shot and he was shooting him even while he was still telling him to put his hands up. The young man was trying to comply but he had been shot so many times, he put his right hand up again as he was falling down to the ground. [58]

Finally, Allen's autopsy report reflects that he had *bullet-entry wounds on his back*, as well as on the *upper-right* portion of his torso.[59] According to Flynn, who also has extensive experience in homicide investigations and officer-involved shootings, these entry wounds could not have occurred in Allen's body in the pattern described in the autopsy report if the shooting occurred in the manner that Staller alleges.[60]

## 2.   A genuine issue of material fact exists with regard to whether a reasonable officer would have concluded that Staller used excessive force.

Once again, Staller does not dispute that the right to be free from excessive force was clearly established at the time the incident that is the subject of this suit. Instead, he claims that—as a matter of law— "a

---

[58] App., p. 32–33.

[59] App., pp. 25–26, 36, 39–40.

[60] App., p. 24–26.

reasonable police officer could have believed that his decision to use force against Allen was lawful."[61] To support this argument, however, Staller relies on the same self-serving statements in his declaration, all of which are disputed, as discussed above.[62]

But even if this Court were to ignore all of the factual discrepancies between Staller's account of the events and those of the witnesses to the incident, Plaintiffs also offer Flynn's expert testimony in response to Staller's motion for summary judgment. In Flynn's expert report, he opines that "any reasonable police officer, having the same information and set of facts as Staller, and having the training and experience of Staller, would have realized that decedent Allen was simply a black man dressed in black clothing and walking at least 20 yards away, and would not have feared for his life and the safety of others."[63] He further opines that "Officer's Staller shooting of Clinton Allen for no lawful reason is not an act that a reasonable official, confronting the circumstances as they appeared to the official at the time of the challenged conduct and in light of then-established law, would

---

[61] Docket No. 31, p. 10.

[62] *See* note 32, *supra*.

[63] App., p. 21.

have believed was constitutional."[64] Put otherwise, Staller's conduct was so egregious, a reasonable jury could conclude that Staller was either plainly incompetent or knowingly violated the law. Because this testimony is suffient to demonstrate that a geniune issue of material fact exists with regard to whether Staller's actions were reasonable, Staller is not entitled to summary judgment on Plaintiffs' excessive-force claim.

**C.    Plaintiffs' properly pleaded their racial-profiling claim.**

Staller's only arguments in support of his motion for summary judgment on Plaintiffs' claim for racial profiling arise out of their mistaken belief that their allegatons are not properly pleaded. In other words, Staller echoes the arguments raised by the City in its motion to dismiss.

At the outset of this discussion, it is imporant to note that this Court only permitted Staller to file a motion for summary judgment at this time to address the issue of qualified immunity.[65] Staller's arguments with regard to Plaintiffs' racial-profiling claim do not raise arguments or authorities related to qualified immunity and therefore, should not be considered at this time.

But even if this Court were inclined to consider the merits of Staller's arguments, this motion should fail for the same reason that the City's motion

---

[64] App., p. 26.
[65] Docket No. 29.

to dismiss should be denied. As discussed in Plaintiffs' response to that motion, Plaintiffs' Amended Complaint included the following factual allegations to support their theory that a policy permitting racial profiling was prevalent in the Dallas Police Department:

- Allen is a black male;[66]

- When Staller arrived at the scene, he had not received any information regarding Allen's description; nor any information to suggest that he was armed and/or dangerous;[67]

- An eyewitness to the shooting (whose affidavit was attached to the Amended Complaint) stated that Allen was complying with Staller's instructions before Staller fired ten or more bullets at Allen—seven of which struck him—and attempted to reload his pistol shortly thereafter;[68]

- Since 2001, over 60 unarmed black men have been killed by members of the Dallas Police Department;[69]

- Since 2001, 70% of officer-involved shootings involved black or Hispanic victims, 93% of these shootings resulted in fatalities;[70]

None of the above factual allegations are "conclusory statements regarding ultimate legal issues," and Plaintiffs respectfully submit that these facts, if accepted as true, could permit this Court to draw the reasonable inference that in recent months and years, racial profiling was a persistent and

---

[66] Docket No. 15, p. 4 ¶ 10.

[67] Docket No. 15, pp. 5–6 ¶¶ 12–13.

[68] Docket No. 15, p. 6 ¶ 15.

[69] Docket No. 15, p. 8 ¶ 18.

[70] Docket No. 15, p. 8 ¶ 18.

widespread practice in the Dallas Police Department. And because Staller fails to offer any evidence to demonstrate that the absence of a factual dispute with regard to these allegations, Staller's motion for summary judgment on this cause of action should be denied.

### CONCLUSION AND PRAYER

The attached evidence and expert report plainly establish that Staller's account of what happened on the night he shot and killed Allen is riddled with factual discrepancies. The veracity of his testimony is inconsistent with the recordings of the police dispatch as well as the sworn testimony of the witness with whom he claims to have spoken to and another eyewitnesses to the shooting. Moreover, even if this Court were to consider Staller's undesignated, conclusory, and self-serving opinions about the purported reasonableness of his conduct, it is completely contradicted by Plaintiffs' expert. Finally, Staller offers no argument or authority to support his request for summary judgment on Plaintiffs' racial-profiling claim. For all of these reasons, Plaintiffs respectfully request this Court to deny Staller's motion in its entirety, and grant to them all other relief to which they may be justly entitled.

Respectfully submitted,

/s/ Daryl K. Washington
Daryl K. Washington
Texas Bar No. 24013714
dwashington@dwashlawfirm.com

Matthew J. Kita
Texas Bar No. 24050883
matt@mattkita.com

325 North St. Paul Street, Suite 1975
Dallas, Texas 75201
(214) 880-4883 (phone)
(214) 751-6685 (facsimile)

ATTORNEYS FOR PLAINTIFFS

## CERTIFICATE OF SERVICE

I hereby certify that on April 28, 2014, the foregoing response was filed with the clerk of the court for the U.S. District Court, Northern District of Texas, using the electronic case filing system of the court. The electronic case filing system sent a "Notice of Electronic Filing" to all attorneys of record who have consented in writing to accept this Notice as service of documents by electronic means.

/s/ Daryl K. Washington
Daryl K. Washington